```
1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
2
                       04-20154-CR-MOORE/TORRES
3

4   THE UNITED STATES OF AMERICA, )
                                  )
5              PLAINTIFF,         )
                                  )
6         VS.                     )
                                  )
7   SANDRA AVILA BELTRAN,         )
                                  )
8              DEFENDANT.         )
    _____)
9
                      (TRANSCRIPT BY DIGITAL RECORDING)
10

11          TRANSCRIPT OF REPORT RE: COUNSEL, ARRAIGNMENT AND

12  PRETRIAL DETENTION HEARING HAD BEFORE THE HONORABLE PATRICK A.

13  WHITE, IN MIAMI, MIAMI-DADE COUNTY, FLORIDA, ON AUGUST 14,

14  2012, IN THE ABOVE-STYLED MATTER.

15

16
    APPEARANCES:
17
    FOR THE GOVERNMENT:   CYNTHIA R. WOOD, A.U.S.A.
18                        99 NE 4TH STREET
                          MIAMI, FL 33132 - 305 961-9001
19
    FOR THE DEFENDANT:    STEPHEN G. RALLS, ESQ.
20                        273 S. SCOTT
                          TUCSON, AZ 85701 - 510 884-1234
21

22
                           CARL SCHANZLEH
23                      OFFICIAL COURT REPORTER
                         U. S. COURTHOUSE
24                   299 E. BROWARD BLVD., 202B
                     FORT LAUDERDALE, FLORIDA 33301
25                        954 769-5488
```

1   APPEARANCES CONTINUED:

2   FOR THE DEFENDANT:    HOWARD J. SCHUMACHER, ESQ.
                          ONE E. BROWARD BLVD., SUITE 700
3                         FT. LAUDERDALE, FL 33301 - 954 356-0477

4

5
                          TABLE OF CONTENTS
6
    WITNESSES:                      DIRECT  CROSS REDIRECT RECROSS
7
    STEPHEN KEPPER ........................... 7
8
                          INDEX TO EXHIBITS
9
    EXHIBITS                    MARKED FOR       RECEIVED
10                              IDENTIFICATION   IN EVIDENCE

11  DESCRIPTION              PAGE     LINE     PAGE    LINE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   (MIAMI, MIAMI-DADE COUNTY, FLORIDA;  AUGUST 14, 2012, IN OPEN

2   COURT.)

3          THE CLERK:  UNITED STATES VERSUS SANDRA AVILA BELTRAN,

4   CASE NUMBER 04-20154-CRIMINAL-MOORE.

5          MS. WOOD:  GOOD MORNING, YOUR HONOR.  CYNTHIA WOOD ON

6   BEHALF OF THE UNITED STATES.

7          MR. SCHUMACHER:  GOOD MORNING, YOUR HONOR.  HOWARD

8   SCHUMACHER ON BEHALF OF MISS BELTRAN.  ALSO WITH ME IS STEPHEN

9   RALLS.

10         THE COURT:  OKAY.  HAVE YOU ALL HAD AN OPPORTUNITY TO

11  DISCUSS THIS MATTER?

12         MR. RALLS:  WE HAVE, JUDGE.

13         THE COURT:  AND HAVE YOU COME TO SOME ACCORD OR ARE

14  YOU LOOKING FORWARD TO DOING A HEARING THIS MORNING?

15         MR. RALLS:  WE HAVE, JUDGE.

16         THERE IS TWO MATTERS BEFORE THE COURT THIS MORNING.

17         THE COURT:  I'M SORRY.  I CAN'T HEAR YOU.

18         MR. RALLS:  THERE ARE TWO MATTERS BEFORE THIS COURT

19  THIS MORNING.  ONE IS THE ISSUE OF ARRAIGNMENT AND THE OTHER

20  ONE IS THE DETENTION HEARING.

21         GOVERNMENT'S COUNSEL AND US HAVE DISCUSSED THE ISSUE

22  OF ARRAIGNMENT.  WE ARE GOING TO ASK THE COURT TO CONTINUE THE

23  ARRAIGNMENT FOR A PERIOD OF 30 DAYS.  PART OF IT IS DUE TO THE

24  TIDYING UP THE ISSUE OF THE ATTORNEY REPRESENTATION, THE OTHER

25  PART INVOLVES DOCUMENTS CONCERNING EXTRADITION.  THEY ARE GOING

4

```
 1   TO BE HANDED OVER TO US AND THAT MAY RAISE SOME JURISDICTIONAL

 2   ISSUES.

 3           THE COURT:  OKAY.  THIS IS AN EXTRADITION FROM MEXICO,

 4   RIGHT?

 5           MS. WOOD:  THAT'S CORRECT, YOUR HONOR.

 6           THE COURT:  ALL RIGHT.  WITH RESPECT TO THE PRETRIAL

 7   DETENTION ARE YOU READY TO GO FORWARD ON THAT OR DO YOU WANT

 8   TO --

 9           MR. RALLS:  WE ARE READY TO GO FORWARD ON IT IF

10   GOVERNMENT'S COUNSEL IS.

11           THE COURT:  COUNSEL, ARE YOU READY TO GO FORWARD ON

12   IT?

13           MS. WOOD:  YES, YOUR HONOR.

14           THE COURT:  OKAY.  GOVERNMENT, HOW WOULD YOU CAN LIKE

15   TO PROCEED?

16           MS. WOOD:  YOUR HONOR, WE WOULD PREFER TO PROCEED BY

17   PROFFER.

18           THE COURT:  OKAY.  YOU MAY.

19           MS. WOOD:  YOUR HONOR, WITH REGARD TO THIS MATTER

20   MISS AVILA BELTRAN HAS BEEN CHARGED WITH TWO COUNTS OF

21   CONSPIRACY.

22           SHE IS CHARGED WITH -- IN CONNECTION WITH TWO

23   PARTICULAR TRANSACTIONS, ONE INVOLVING A 9,000 KILOGRAM LOAD OF

24   COCAINE THAT WAS SEIZED FROM A BOAT IN DECEMBER OF 2001.

25           THE SECOND DEAL DEALS WITH A LOAD OF COCAINE THAT WAS
```

1  DEALT IN CHICAGO IN CONNECTION WITH HER FOR 100 KILOGRAMS OF

2  COCAINE IN 2004.  SHE HAS, IN FACT, BEEN INDICTED IN CONNECTION

3  WITH THIS MATTER.

4        SHE WAS ARRESTED IN MEXICO IN 2007.  SHE HAS BEEN

5  DISPUTING THE EXTRADITION SINCE HER ARREST IN MEXICO.  SHE WAS,

6  IN FACT, INDICTED IN CONNECTION WITH THIS PARTICULAR MATTER.

7  SHE IS FACING A MANDATORY MINIMUM SENTENCE OF 10 YEARS.  SO THE

8  PRESUMPTION DOES IN FACT APPLY AS TO EACH COUNT.

9        SHE IS A LEVEL 38 ON THE GUIDELINE.  SHE IS FACING --

10 WITHOUT ACCEPTANCE OR SAFETY VALVE SHE IS FACING SOMEWHERE

11 AROUND A 188 TO 235 MONTHS IN CONNECTION WITH THIS.  THAT IS

12 WITHOUT -- AS I INDICATED WITHOUT POINTS, WITHOUT A REDUCTION

13 FOR ACCEPTANCE OR SAFETY VALVE BUT IT ALSO DOES NOT TAKE INTO

14 ACCOUNT ANY POTENTIAL ADDITIONAL POINTS SHE MAY RECEIVE FOR A

15 LEADERSHIP ROLE.

16        THE WEIGHT OF THE EVIDENCE AGAINST MISS AVILA BELTRAN

17 IS STRONG.  WE HAVE INTERCEPTED PHONE CALLS.  WE HAVE A NUMBER

18 OF COOPERATORS.  THERE WAS ALSO A SEIZURE IN FACT MADE, AS I

19 INDICATED THE 9,000 KILOGRAMS OF COCAINE THAT WAS IN FACT

20 SEIZED IN CONNECTION WITH THIS MATTER.  MISS AVILA BELTRAN HAS

21 NO TIES TO THE UNITED STATES.  SHE HAS NO FAMILY HERE BECAUSE

22 THIS IS, OF COURSE, A EXTRADITION SHE WAS IN FACT PAROLED INTO

23 THE UNITED STATES SPECIFICALLY TO FACE THE CHARGES IN

24 CONNECTION WITH THIS MATTER AND SHE HAS NO LEGAL STATUS.

25        SHE WOULD THEREFORE BE SUBJECT TO A DETAINER BY

1  IMMIGRATION AND CUSTOMS ENFORCEMENT WHICH WOULD RESULT IN THE

2  DEFENDANT'S RELEASE ONLY TO THE IMMIGRATION AUTHORITIES IN

3  CONNECTION WITH THIS MATTER.

4          GIVEN ALL OF THE ABOVE, YOUR HONOR, WE WOULD ASK THAT

5  THE COURT HOLD THE DEFENDANT PRETRIAL.

6          THE COURT:  OKAY.  COUNSEL?

7          MR. RALLS:  THANK YOU, JUDGE.

8          THE COURT:  IS THERE AN AGENT FOR COUNSEL TO EXAMINE?

9          MS. WOOD:  YES, YOUR HONOR.

10          THE COURT:  COUNSEL WOULD YOU LIKE TO DO SO?

11          MR. RALLS:  I WOULD.  YES, JUDGE.

12          THE COURT:  OKAY.

13          THE CLERK:  PLEASE RAISE YOUR RIGHT HAND.

14          (WITNESS SWORN)

15          THE WITNESS:  I DO.

16          THE CLERK:  PLEASE HAVE A SEAT.

17          PLEASE STATE YOUR NAME AND SPELL YOUR LAST NAME FOR

18  THE RECORD.

19          THE WITNESS:  YES, MA'AM.  MY NAME IS STEPHEN KEPPER.

20  THE LAST NAME IS KEPPER.

21          THE CLERK:  THANK YOU.

22          THE COURT:  YOU MAY PROCEED.

23          MR. RALLS:  MAY I HAVE JUST ONE MOMENT, YOUR HONOR?

24

25

```
 1                         STEPHEN KEPPER,

 2  BEING DULY SWORN, WAS EXAMINED AND TESTIFIED AS FOLLOWS:

 3                       CROSS EXAMINATION

 4  BY MR. RALLS:

 5  Q.  SIR, LET ASK YOU A COUPLE OF QUESTIONS HERE.

 6  A.  YES, SIR.

 7  Q.  THE EVENTS THAT TOOK PLACE IN THIS CASE CONCERNING THE

 8  9,000 KILOGRAMS OF MARIJUANA, WHAT YEAR WAS THAT?

 9              MS. WOOD:  COCAINE.

10  BY MR. RALLS:

11  Q.  EXCUSE ME.  COCAINE.

12  A.  IT WAS BACK IN 2001.

13  Q.  OKAY.  THE HUNDRED KILOS OF COCAINE THAT TOOK PLACE, OR

14  ALLEGED TO HAVE TAKEN PLACE IN THIS CASE, WHEN DID THEY TAKE

15  PLACE?

16  A.  THAT WAS BACK IN THE SAME TIME FRAME.

17  Q.  2001?

18  A.  YES, SIR.

19  Q.  OKAY.  IT WASN'T IN 2004.

20  A.  I'M SORRY?

21  Q.  IT WAS NOT 2004.

22  A.  WAS THERE SOMETHING THAT HAPPENED PERTINENT IN 2004?

23  Q.  YES.

24  A.  YES, SIR.  SHE WAS INDICTED.

25  Q.  OKAY.  OTHER THAN THAT, AS FAR AS THE EVENTS THAT TOOK
```

```
 1    PLACE THEY TOOK PLACE IN 2001, IS THAT CORRECT?

 2    A.   THE SEIZURE WAS IN 2001, THE BIG SEIZURE IN THE CASE.

 3    Q.   WERE YOU FAMILIAR WITH THE EXTRADITION ORDER THAT WAS

 4    ISSUED BY THE COURT OF APPEALS IN MEXICO?

 5    A.   I KNEW THERE WAS A LOT OF LEGALITIES AND A LOT OF THINGS

 6    INVOLVING THE GOVERNMENT OF MEXICO, BUT THE PARTICULAR DETAILS

 7    NO, SIR, I AM NOT FULLY AWARE OF THOSE.

 8    Q.   WERE YOU AWARE THAT THE COURT FOUND THAT THERE WAS NO

 9    PROBABLE CAUSE AT ALL INVOLVING MISS BELTRAN OF THE 9,000

10    KILOGRAMS OF COCAINE?

11              MS. WOOD:  OBJECTION.  HOW WOULD HE KNOW THAT?

12              MR. RALLS:  I'M ASKING HIM IF HE WAS AWARE.

13              THE COURT:  I'M SORRY.  THE OBJECTION WAS?

14              MS. WOOD:  THE OBJECTION AT THIS POINT IS HOW --

15    WHAT'S THE BASIS FOR THIS AGENT'S KNOWLEDGE REGARDING THE

16    ACTIVITIES WITH THE COURT IN MEXICO.

17              THE COURT:  COUNSEL, WOULD YOU RESPOND?

18              MR. RALLS:  YES.  IF HE IS AWARE OF WHETHER OR NOT THE

19    COURT FOUND A LACK OF ANY PROBABLE CAUSE THAT SHE WAS INVOLVED

20    IN THE ALLEGATIONS OF THE 9,000 KILOGRAMS I THINK IT IS

21    IMPORTANT --

22              THE COURT:  HE CAN ANSWER IT.  LET HIM ANSWER IT.

23              GO AHEAD.

24              THE WITNESS:  I KNOW THAT THERE WAS TWO COUNTS TO THE

25    INDICTMENT, AND IN THE END I KNOW SHE WAS EXTRADITED HERE TO
```

1  THE SOUTHERN DISTRICT OF FLORIDA ON AUGUST 9TH FOR AT LEAST ONE

2  OF THOSE COUNTS.

3  BY MR. RALLS:

4  Q.  AND THE ONE COUNT THAT SHE WAS EXTRADITED ON WAS THE 100

5  KILOGRAM COCAINE CASE, ISN'T THAT CORRECT?

6  A.  I KNOW -- I BELIEVE IT'S THE COUNT -- THE COUNT TO POSSESS

7  WITH INTENT TO DISTRIBUTE COCAINE FIVE KILOS OR MORE.  AS FAR

8  AS THE PARTICULARS, AND THE DETAILS, AND THE LEGAL GOINGS-ON IN

9  MEXICO IN A DIFFERENT COUNTRY, A DIFFERENT JURISDICTION,

10  DIFFERENT GOVERNMENT, I DON'T FEEL COMFORTABLE TESTIFYING TO

11  THAT.  MY KNOWLEDGE OF THAT IS VERY LIMITED.

12  Q.  WELL, LET ME BE MORE SPECIFIC.

13       DO YOU KNOW WHICH ONE OF THOSE TWO EVENTS SHE WAS

14  EXTRADITED ON BECAUSE APPARENTLY SHE WAS -- ONE OF THOSE EVENTS

15  SHE WAS NOT EXTRADITED ON.

16  A.  WELL, I DO KNOW FROM THE INVESTIGATION THAT THE HUNDRED

17  KILO EVENT THAT TOOK PLACE IN THE SUMMER OF 2001 WAS ASSOCIATED

18  WITH THE 9,000 KILOS THAT LATER HAPPENED, AND THROUGH OUR

19  INVESTIGATION WE COULD BETTER EXPLAIN THAT AND THROW, YOU

20  KNOW, OTHER MEANS WE CAN BETTER EXPLAIN THAT.

21       I DON'T THINK WE WOULD DO THAT IN A PTD.  BUT THE

22  HUNDRED KILOS HAPPENED FIRST WHICH OUR INVESTIGATION SHOWS THAT

23  MISS AVILA BELTRAN WAS A PART OF.  AND THEN AFTER THE FACT WITH

24  MISS AVILA BELTRAN AND OTHER CO-CONSPIRATORS THERE WAS ANOTHER

25  9,000 KILO SHIPMENT.  BOTH OF THOSE DRUG TRANSACTIONS, THE

 1 | 9,000 KILO SHIPMENT AND THE HUNDRED KILO SHIPMENT, BOTH OF

 2 | THOSE GO TOGETHER IN OUR INVESTIGATION --

 3 | Q.  OKAY.

 4 | A.  -- AND ARE A PART OF OUR INVESTIGATION.

 5 | Q.  I UNDERSTAND WHAT YOU'RE SAYING THERE.  BUT MY QUESTION

 6 | WAS, WHICH OF THOSE TWO EVENTS WAS SHE EXTRADITED ON TO THE

 7 | UNITED STATES?

 8 |         MS. WOOD:  ASKED AND ANSWERED.  OBJECTION.

 9 |         THE COURT:  OVERRULED.

10 |         GO AHEAD.  ANSWER THE QUESTION.

11 |         THE WITNESS:  I CAN EXPLAIN THIS IF YOU WANT TO SPEND

12 | TIME.  SO THE HUNDRED KILO --

13 |         THE COURT:  GOVERNMENT, IS THERE AN OBJECTION TO HIM

14 | RESPONDING TO THE QUESTION OR IS THE OBJECTION IS THAT IT WAS

15 | ASKED AND ANSWERED.

16 |         MS. WOOD:  WELL, I WILL OBJECT THAT HE IS RESPONDING

17 | TO THE QUESTION, YOUR HONOR.

18 |         THE COURT:  YOU OBJECT TO HIM RESPONDING --

19 |         MS. WOOD:  I AM GOING TO OBJECT, YES.

20 |         THE COURT:  OKAY.  BASED ON WHAT?

21 |         MS. WOOD:  YOUR HONOR, IN THIS CASE THE AGENT HAS

22 | ALREADY INDICATED THAT HE ONLY HAS LIMITED INFORMATION

23 | REGARDING THE EXTRADITION.  HE HAS ATTEMPTED TO EXPLAIN TO

24 | DEFENSE COUNSEL THE INVESTIGATION AND THE TIES BETWEEN THE TWO

25 | COUNTS THAT WERE INVOLVED IN THE INDICTMENT.  HOWEVER, EITHER

 1  COUNT STANDS AS A PRESUMPTION AND AT THIS POINT WE ARE

 2  PROCEEDING BASED ON THE INDICTMENT THAT WE HAVE BEFORE THE

 3  COURT.

 4          THIS IS NOT THE TIME TO -- AT THIS POINT TO DETERMINE

 5  WHETHER OR NOT THERE WERE -- WHETHER OR NOT IT WAS ONE COUNT OR

 6  TWO COUNTS.  THE FACT OF THE MATTER IS, IS THAT SHE IS

 7  ASSOCIATED, SHE IS CHARGED IN THE INDICTMENT WITH BOTH COUNTS.

 8  THAT PRESENTS PROBABLE CAUSE AND IT DOES IN FACT TRIGGER THE

 9  PRESUMPTION FOR BOTH.

10          THE COURT:  I WILL SUSTAIN THE OBJECTION ON THAT

11  BASIS.

12          GO AHEAD, COUNSEL.

13  BY MR. RALLS:

14  Q.  LET'S TALK A LITTLE BIT ABOUT THE WEIGHT OF THE EVIDENCE

15  HERE.  YOU MENTIONED THAT THERE WAS A WIRETAP CASE THAT TOOK

16  PLACE?

17  A.  THERE WAS BUT YOU ARE BRINGING IT UP FOR THE FIRST TIME.

18  YES, SIR.

19  Q.  OH, I'M SORRY.  IT MAY HAVE BEEN ARGUMENT BY COUNSEL.

20          THERE WAS ONLY ONE TELEPHONE CALL THAT WAS

21  INTERCEPTED, ISN'T THAT CORRECT, CONCERNING MISS AVILA BELTRAN?

22  A.  THERE IS AT LEAST ONE.

23  Q.  IS THERE MORE THAN ONE?

24  A.  THERE IS A LOT OF CALLS IN THERE.  TO MY KNOWLEDGE RIGHT

25  NOW I'M AWARE OF THE SEPTEMBER 14TH, 2001 PHONE CALL WHERE YOUR

1   CLIENT DISCUSSED A DRUG DEBT WITH A COOPERATOR AT THAT TIME WHO

2   WAS A CO-CONSPIRATOR.

3   Q.  AT LEAST WE CAN SAY THERE WAS ONE CALL BUT YOU CAN'T TELL

4   ME THAT THERE WAS MORE THAN ONE CALL, CORRECT?

5   A.  ONE CALL IS FAIR AT THIS POINT.

6   Q.  OKAY.  AND THAT ONE CALL MAKES NO MENTION OF ANY DRUGS,

7   DOES IT?

8   A.  YOU KNOW AS WELL AS I DO THAT IN THE DRUG BUSINESS YOU ARE

9   NOT GOING TO COME OUT ON A PHONE CALL AND TALK ABOUT COCAINE IN

10  PLAIN LANGUAGE.  IT WAS CODED --

11  Q.  LISTEN --

12  A.  -- CONVERSATIONS.

13  Q.  LISTEN TO MY QUESTION, SIR.

14        THE ONE AND ONLY CALL THAT WAS INVOLVED IN THIS

15  WIRETAP INVESTIGATION THERE IS NO MENTION OF ANY DRUGS, IS

16  THERE?

17  A.  I JUST ANSWERED.  IT WAS A CODED CONVERSATION ABOUT A DRUG

18  DEBT.

19  Q.  AND ARE YOU THE ONE THAT INTERPRETED THAT CODED

20  CONVERSATION?

21  A.  NO, SIR.  I WASN'T PRESENT AT THE TIME.

22  Q.  OKAY.  SO THE CODED CONVERSATION WAS INTERPRETED BY AN

23  INDIVIDUAL WHO LATER WAS ARRESTED AND WHO LATER DECIDED TO

24  BECOME A COOPERATING GOVERNMENT INFORMANT, AND IT WAS THROUGH

25  HIS INTERPRETATION THAT YOU GIVE YOUR TESTIMONY TODAY, IS THAT

1  CORRECT?

2  A.  IT WAS THROUGH THE INDIVIDUAL THAT COOPERATED WITH US.  HIS

3  INTERPRETATION OF THE CALL, THAT'S CORRECT, HE GAVE IT TO THE

4  AGENTS AND --

5  Q.  HAVE I SUMMARIZED THE FACTS ACCURATELY?

6  A.  REGARDING THAT PHONE CALL?

7  Q.  YES.

8  A.  THAT'S FAIR.

9  Q.  AND ALSO, SIR, THERE NEVER WAS A HUNDRED KILOGRAM COCAINE

10  SEIZURE, WAS THERE?

11  A.  NO, SIR.  THE HUNDRED -- THE PROCEEDS FROM THE HUNDRED

12  KILOS, OR AT LEAST PART OF THE PROCEEDS WERE SEIZED.

13  APPROXIMATELY 66,000 TO 60,000 WAS SEIZED IN CHICAGO.

14  Q.  OKAY.

15  A.  AND THAT WAS A DRUG DEBT THAT RESULTED FROM THAT, THAT WAS

16  OWED TO YOUR CLIENT.

17  Q.  AND THIS WAS THE EXPLANATION THAT WAS GIVEN BY THE

18  GOVERNMENT'S COOPERATING -- WE WILL CALL HIM INFORMANT WHO WAS

19  COOPERATING FOR REASONS OF TRYING TO GET A BETTER PLEA OFFER

20  FROM THE GOVERNMENT, ISN'T THAT CORRECT?

21  A.  THAT'S FAIR.

22  Q.  OTHER THAN THAT, SIR, YOU DON'T HAVE ANY OTHER EVIDENCE

23  THAT MISS AVILA BELTRAN WAS INVOLVED IN THOSE HUNDRED KILOGRAM,

24  DO YOU?

25  A.  HE WOULD BE THE PRIMARY SOURCE OF INFORMATION.  THERE WERE

1  OTHER PEOPLE INVOLVED IN THAT SHIPMENT.  I WOULD NEED TO --

2  Q.  SIR, LET ME REPEAT THE QUESTION TO YOU.

3         OTHER THAN THIS COOPERATING CODEFENDANT YOU HAVE NO

4  OTHER WITNESS THAT SAYS THAT MISS AVILA BELTRAN WAS INVOLVED IN

5  THOSE HUNDRED KILOGRAMS, DO YOU?

6  A.  I WOULD NEED TO GO BACK AND LOOK AT THE BRIEFING REPORTS.

7  RIGHT NOW HE IS THE ONE THAT I'M AWARE OF AND THE ONE WE'RE

8  TALKING ABOUT.  I WOULD REALLY NEED TO GO BACK AND --

9  Q.  YOU ARE THE CASE AGENT, IS THAT CORRECT?

10  A.  I INHERITED THIS CASE, YES, SIR.

11  Q.  ALL RIGHT.  AND HAVING INHERITED THIS CASE YOU SHOULD BE

12  FAMILIAR WITH THIS CASE, SHOULD YOU NOT?

13  A.  IT'S AN OLD CASE, SIR.

14  Q.  WELL, THAT'S NOT MY QUESTION.  SHOULD YOU BE FAMILIAR WITH

15  THE CASE?

16  A.  I AM FAMILIAR AND I'M EXPLAINING.  --.

17         MS. WOOD:  WELL, OBJECTION AT THIS POINT --

18         THE WITNESS:  -- MY FAMILIARITY WITH THE CASE.

19         THE COURT:  HOLD ON.  ONE SECOND.  ONE SECOND.

20         HE ASKED HIM A LEGITIMATE QUESTION.  HE CAN ASK HIM

21  THAT QUESTION.

22         RESPOND TO THE QUESTION.

23         THE WITNESS:  SIR, THE HUNDRED KILO SHIPMENT THAT WE

24  ARE TALKING ABOUT, MY BASIS OF INFORMATION IS PRIMARILY COMING

25  FROM THIS COOPERATOR THAT YOU'RE TALKING ABOUT.

1  BY MR. RALLS:

2  Q.  OKAY.

3  A.  THERE MAY BE OTHER INDIVIDUALS OUT THERE THAT COULD PROVIDE

4  ADDITIONAL INFORMATION.  I WOULD NEED TO LOOK BACK AT

5  DEBRIEFING REPORTS.  I WOULD NEED TO INTERVIEW THESE

6  INDIVIDUALS, AND WHAT NOT, TO GIVE YOU A BETTER ANSWER.

7  Q.  WELL, SIR, WE ARE HERE AT A HEARING TODAY CONCERNING THE

8  ISSUE OF DETENTION CONCERNING FACTS OF THIS CASE.  DID YOU

9  PREPARE FOR THIS HEARING?

10  A.  I DID.

11  Q.  AND HAVING PREPARED FOR THIS HEARING YOU CANNOT ANSWER THE

12  QUESTION THAT I ASKED YOU, WHETHER OR NOT THERE IS ANYBODY ELSE

13  OTHER THAN THIS COOPERATOR THAT CAN GIVE INFORMATION CONCERNING

14  MISS AVILA BELTRAN?

15  A.  TO MY KNOWLEDGE RIGHT NOW -- I'M GOING TO ANSWER THE

16  QUESTION AGAIN.  TO MY KNOWLEDGE RIGHT NOW HE IS THE ONE THAT I

17  AM DRAWING MY INFORMATION FROM REGARDING THIS TESTIMONY AND

18  REGARDING THAT HUNDRED KILO SHIPMENT TO CHICAGO.  HE IS THE ONE

19  I'M AWARE OF.

20  Q.  OKAY.  AND JUST TO BE PERFECTLY CLEAR, THERE NEVER WAS A

21  HUNDRED KILOGRAMS OF COCAINE SEIZED IN THIS CASE, WAS THERE?

22  A.  NO, SIR.  NOT THE -- NOT PERTAINING TO THE CHICAGO SEIZURE

23  TO MY KNOWLEDGE.

24  Q.  OKAY.  AND, AS FAR AS YOU KNOW, THERE NEVER HAS BEEN ANY

25  COCAINE SEIZED CONCERNING MISS AVILA BELTRAN, IS THAT CORRECT?

```
 1   A.  THE 9,291 KILOGRAMS THAT WERE SEIZED IN THE PACIFIC OCEAN.

 2   Q.  I THINK WE HAVE GONE ROUND AND ROUND ON THAT ONE.  AND YOU

 3   DON'T KNOW WHETHER OR NOT THE MEXICAN COURT HAS ALREADY

 4   DETERMINED --

 5   A.  SHE WAS EXTRADITED FOR HER CONSPIRATORIAL ROLE WITHIN THAT

 6   SHIPMENT.  I HAVE ANSWERED THAT QUESTION.  SO --

 7   Q.  I --

 8   A.  -- I'M NOT USED TO DISCUSSING AT LENGTH AT A PDT THE ENTIRE

 9   CASE BUT I CAN BETTER EXPLAIN THAT IF YOU WANT TO --

10   Q.  SIR, YOU ARE A POLICE OFFICER YOU SHOULD BE USED TO BEING

11   ASKED QUESTIONS UNDER CROSS-EXAMINATION, CORRECT?

12           THE COURT:  OKAY.  ONE SECOND.

13           THIS IS NOT THE TRIAL.

14           MR. RALLS:  I UNDERSTAND.

15           THE COURT:  I'M JUST TRYING TO GET SOME BASIC

16   INFORMATION SO I CAN MAKE A DETERMINATION.

17           I HAVE HEARD THE SAME QUESTION ASKED SEVERAL TIMES AND

18   I HEARD THE RESPONSES CONSISTENTLY RESPOND SEVERAL TIMES.

19           DO YOU HAVE ANYTHING ELSE?

20           MR. RALLS:  NOTHING FURTHER, JUDGE.  THANK YOU, JUDGE.

21           THE COURT:  GOVERNMENT, DO YOU HAVE ANYTHING ELSE?

22           MS. WOOD:  NO, YOUR HONOR.

23           THE COURT:  OKAY.  GOVERNMENT, WHY DON'T YOU GIVE ME A

24   SUMMARY OF WHAT THIS MATTER IS ABOUT.

25           MS. WOOD:  YOUR HONOR, THIS MATTER INVOLVES TWO
```

```
 1  CHARGES AGAINST THE DEFENDANT.  SHE WAS CHARGED AGAIN IN 2004
 2  WITH A 9,000 KILOGRAM SEIZURE OFF THE COAST OF MEXICO.  THE
 3  INFORMATION THAT WE HAVE FROM THE INDIVIDUALS INVOLVED IN THAT
 4  DEAL WAS THAT THERE WAS INITIALLY A DEAL THAT WAS GOING FORWARD
 5  IN CHICAGO.
 6         THE MONEY ASSOCIATED WITH THAT DEAL WAS IN FACT
 7  SEIZED.  THE MONEY FOR -- EXCUSE ME.  THE CHICAGO DEAL WAS FOR
 8  A HUNDRED KILOGRAMS OF COCAINE.  THE MONEY THAT WAS THE PROFITS
 9  FROM THAT DEAL WAS IN FACT SEIZED BY LAW ENFORCEMENT.  THERE
10  WERE INDIVIDUALS -- THERE WAS AN ONGOING FBI INVESTIGATION IN
11  NEW YORK REGARDING THE INDIVIDUALS WHO RECEIVED THE COCAINE.
12  THERE WAS A SEIZURE IN CHICAGO OF THE MONEY.
13         THE INDIVIDUAL WHO IN FACT OWED THE MONEY WAS ALSO THE
14  SUBJECT OF A WIRETAP INVESTIGATION HERE IN MIAMI.  AS A RESULT
15  OF THE WIRETAP THE MONEY WAS IN FACT SEIZED.  THAT INDIVIDUAL
16  WAS LATER ARRESTED.  HE IS STILL IN FACT OWED THE INDIVIDUALS
17  WHO HAD SUPPLIED HIM WITH THE COCAINE.
18         HE INDICATED THAT THAT WAS MISS AVILA BELTRAN, THAT
19  THAT INFORMATION WAS IN FACT CORROBORATED BY A PHONE CALL THAT
20  WAS INTERCEPTED -- BY AT LEAST ONE PHONE CALL THAT WAS
21  INTERCEPTED OVER HIS -- OVER HIS WIRE WHEN IT WAS UP.
22         WHEN HE BEGAN TO IN FACT COOPERATE WITH THE GOVERNMENT
23  HE PROVIDED THE NAMES OF INDIVIDUALS, INCLUDING THE NAMES OF
24  THE OTHER CODEFENDANTS INVOLVED IN THIS CASE WHO HAVE ALL PLED
25  GUILTY TO THE CHARGES IN CONNECTION WITH THIS MATTER.  THEY
```

1 HAVE ALL INDICATED THAT THEY DID IN FACT PROCEED WITH A DEAL TO

2 MOVE 9,000 KILOGRAMS OF COCAINE BY SHIP OFF THE COAST OF MEXICO

3 THAT WAS IN FACT SEIZED.  THE INDIVIDUALS THAT WERE INVOLVED IN

4 THAT HAVE IN FACT IDENTIFIED THE DEFENDANT AS BEING A

5 PARTICIPANT IN THAT.  THE COOPERATOR INDICATED THAT THE

6 DEFENDANT HAD BECOME INVOLVED IN THAT MATTER AS A RESULT OF HER

7 ATTEMPTS TO COLLECT ON THE DEAL FROM CHICAGO.

8 THE COURT:  OKAY.  COUNSEL, IS SHE A RISK OF FLIGHT OR

9 A DANGER TO THE COMMUNITY?

10 MS. WOOD:  SHE IS BOTH, YOUR HONOR.

11 AS A TRAFFICKER AT THE LEVEL THAT SHE IS THE --

12 MISS AVILA BELTRAN IN CONNECTION WITH THIS PARTICULAR MATTER

13 HAS -- IS IN FACT A DANGER TO THE COMMUNITY BECAUSE OF THE

14 AMOUNT OF NARCOTICS THAT SHE HAS BEEN MOVING.  THERE IS A

15 PRESUMPTION OF THAT.  THERE IS IN FACT NOTHING TO REBUT THAT

16 PRESUMPTION.

17 SHE IS ALSO A RISK OF FLIGHT.  SHE HAS NO TIES TO THE

18 UNITED STATES.  SHE HAS IN FACT BEEN EXTRADITED FROM MEXICO AND

19 IS IN FACT HERE SOLELY TO FACE THE CHARGES IN CONNECTION WITH

20 THIS MATTER.

21 THE COURT:  COUNSEL?

22 MR. RALLS:  THANK YOU, JUDGE.

23 LET ME DEAL WITH DANGER TO THE COMMUNITY FIRST.  THAT

24 REQUIRES BY CLEAR AND CONVINCING EVIDENCE THAT THE PERSON IS A

25 DANGER TO THE COMMUNITY.  FROM WHAT THIS COURT HAS HEARD FROM

1  THE GOVERNMENT'S WITNESS TODAY THERE IS NO SUCH EVIDENCE.  AT

2  BEST THE EVIDENCE IS EXTREMELY WEAK CONCERNING HER INVOLVEMENT

3  IN THIS CASE AND THERE HAS BEEN NO TESTIMONY AT ALL THAT SHE

4  POSES A DANGER TO THE COMMUNITY.

5       THE EVIDENCE THAT THIS COURT HAS HEARD IS THAT THERE

6  IS ONE COOPERATING CODEFENDANT THAT POST-ARREST GAVE HIS

7  INTERPRETATION TO ONE SINGLE CALL ON A WIRETAP AND SAID, THIS

8  CALL MEANS THIS.  ABSENT WHAT THE COOPERATOR SAID THERE IS NO

9  EVIDENCE OF ANY CRIMINAL INVOLVEMENT ON BEHALF OF MRS. BELTRAN.

10      LET ME TALK A LITTLE BIT ABOUT WHY 3142 ALLOWS US THE

11  ABILITY TO ARGUE FOR HER RELEASE IN THIS CASE.

12      AS THIS COURT IS WELL AWARE 3142 TALKS ABOUT THE

13  PRESUMPTION AND THE FACT THAT THE PRESUMPTION IS REBUTTABLE

14  WHEN YOU DEAL WITH A SITUATION WHERE YOU HAVE MORE THAN A

15  SENTENCE OF 10 YEARS IN THIS CASE.

16      ALL THAT THE STATUTE REQUIRES IS THAT WE REASONABLY

17  ASSURE THE APPEARANCE OF THE INDIVIDUAL THAT IS BEFORE THE

18  COURT.  WE HAVE HER IN THIS COUNTRY LAWFULLY NOW.  INS HAD TO

19  PROVIDE HER PAROLE INTO THIS COUNTRY.  THEREFORE, SHE IS

20  LAWFULLY INTO THIS COUNTRY.  SHE IS HERE FOR THE PURPOSE OF

21  PROSECUTION, NOT FOR PURPOSES OF DETENTION.  SO HER STATUS HERE

22  IS THAT SHE IS HERE LAWFULLY.

23      THE OTHER ASPECT THAT WE HAVE TO DEAL WITH AND THE

24  COURT HAS TO CONSIDER IS THE AGE OF THIS CASE.  THE EVENTS IN

25  THIS CASE AT THE VERY LATEST TOOK PLACE PROBABLY AT THE END OF

1  NOVEMBER OF 2001.  WHAT WE ARE TALKING ABOUT IS AN ELEVEN YEAR

2  OLD CASE.

3      WE ALSO HAVE CERTAIN CONDITIONS THAT THIS COURT CAN

4  LOOK AT IN THIS CASE AND DETERMINE WHETHER OR NOT WE CAN FIND

5  THOSE MEANS THAT WOULD REASONABLY ASSURE HER APPEARANCE IN THIS

6  COURT.  AND WHAT I WOULD PROFFER TO THE COURT IS THAT SINCE WE

7  HAVE ALREADY GONE THROUGH THE EXTRADITION PROCESS THAT THERE BE

8  A WAIVER OF EXTRADITION THAT SHE WOULD SIGN SO WE NEVER HAVE TO

9  GO THROUGH THAT PROCESS AGAIN IF, FOR EXAMPLE, SHE SHOULD HAVE

10 EVER -- THE COURT RELEASES HER SHE WAS TO RETURN TO MEXICO THAT

11 PROCESS WOULD NOT TAKE PLACE.

12     WE WOULD ALSO PROFFER THAT HER FAMILY WOULD MAKE A

13 RESIDENCE AVAILABLE TO HER HERE IN MIAMI.  THAT SHE WOULD BE

14 SUBJECTED TO ELECTRONIC MONITORING, THAT THERE WOULD BE DAILY

15 IN PERSON CONTACT WITH PRETRIAL SERVICES, THAT SHE WOULD BE

16 UNDER A FORM OF HOUSE ARREST HERE IN MIAMI AND THAT HER BOND

17 WOULD BE SECURED BY A HUNDRED THOUSAND DOLLARS CASH OR

18 CORPORATE SURETY.  I THINK THOSE CONDITIONS WOULD MORE THAN

19 ALLEVIATE ANY FLIGHT RISK.  AND AGAIN, IT IS WHAT WOULD

20 REASONABLY ASSURE HER APPEARANCE IN COURT.

21     FOR THOSE REASONS I WOULD ASK THE COURT TO CONSIDER

22 THE RELEASE OF MISS AVILA BELTRAN.

23     THE OTHER THING THAT I WOULD ALSO ASK THE COURT IS TO

24 ALSO CONSIDER IF THE COURT TAKES INTO CONSIDERATION THE

25 ARGUMENT THAT THERE WAS 9,000 KILOGRAMS INVOLVED IN THIS CASE

1  THAT THE MATTER BE DEFERRED UNTIL WE DO HAVE THE OPPORTUNITY

2  UNDER RULE 26.2 TO REVIEW THE MATERIAL THAT IS RELIED UPON BY

3  THE GOVERNMENT'S WITNESS AND ALSO TO ALLOW US THE OPPORTUNITY

4  TO LOOK AT THE FINAL MEXICAN EXTRADITION PAPERS WHICH BASICALLY

5  SET OUT WHY SHE WAS BEING EXTRADITED INTO THE UNITED STATES AND

6  BASICALLY WOULD SET OUT WHY OR WHAT CHARGE SHE CAN OR WHAT

7  EVENT SHE CAN BE CHARGED WITH.

8            THANK YOU, JUDGE.

9            THE COURT:   THANK YOU.

10            ANYTHING ELSE FROM THE GOVERNMENT?

11            MS. WOOD:   JUST BRIEFLY, YOUR HONOR.

12            EVEN IF THE MEXICAN GOVERNMENT HAS ONLY EXTRADITED HER

13  ON THE ONE COUNT.  THIS IS NOT TRIAL.  WE ARE LOOKING AT

14  PRETRIAL DETENTION AT THIS POINT AND THE COURT HAS TO TAKE INTO

15  ACCOUNT WHAT IN FACT SHE WAS CHARGED WITH IN CONNECTION WITH

16  THIS PARTICULAR INDICTMENT.

17            THE COURT:   OKAY.  THANK YOU ALL.

18            THIS DEFENDANT HAS BEEN CHARGED BY WAY OF INDICTMENT

19  WITH NARCOTIC OFFENSES.

20            THE CHARGE DOES TRIGGER THE PRESUMPTION THAT SHE IS A

21  RISK OF FLIGHT.  THE WEIGHT OF THE EVIDENCE IN THIS CASE IS

22  VERY INTERESTING AND STRAIGHTFORWARD.  APPARENTLY THERE WERE

23  SOME DRUG DEALS HERE IN THE UNITED STATES FOR A LARGE AMOUNT OF

24  DRUGS, I BELIEVE 9,000 KILOS AND ANOTHER ONE AT 100 KILOS.

25            THERE WAS COMMUNICATION FROM THE GOVERNMENT THAT THERE

1  IS A COOPERATOR WHO WAS INVOLVED IN THIS CONSPIRACY WHO -- AND

2  OTHERS HAVE TARGETED THIS LADY AS BEING ONE OF THE

3  CO-CONSPIRATORS IN THIS CASE.

4        THE DEFENSE RAISES SOME VERY INTERESTING ARGUMENTS

5  WHICH WOULD BE VERY INTERESTING TO SEE HOW THESE ARGUMENTS

6  PREVAIL IN A TRIAL SITUATION.  BUT MY TASK HERE TODAY IS NOT TO

7  JUDGE THE CASE BUT TO MAKE A DETERMINATION AS TO WHETHER SHE IS

8  A RISK OF FLIGHT OR A DANGER TO THE COMMUNITY.

9        ALTHOUGH THE DEFENSE DID SEEM TO MINIMIZE HER ROLE IN

10  THIS CONSPIRACY THE TRUTH OF THE MATTER IS, SHE DOESN'T HAVE TO

11  TOUCH THE COCAINE, SHE DOESN'T HAVE TO SEE THE COCAINE.  SHE

12  JUST HAS TO BE A MEMBER OF THE CONSPIRACY AND DO SOMETHING IN

13  FURTHERANCE OF THE CONSPIRACY AND I BELIEVE THE GOVERNMENT HAS

14  ESTABLISHED THAT SHE HAS BEEN TARGETED AS A MEMBER OF THE

15  CONSPIRACY.

16        THE REAL QUESTION HERE IS, IS SHE A DANGER TO THE

17  COMMUNITY OR IS SHE A RISK OF FLIGHT.  I DO NOT BELIEVE THAT

18  SHE IS A DANGER TO THE COMMUNITY.  SHE HAS BEEN INCARCERATED IN

19  MEXICO FOR ELEVEN YEARS WHICH IS A LONG TIME.  IT DOESN'T

20  APPEAR THAT THERE IS ANYTHING ELSE GOING ON WITH RESPECT TO

21  THIS CASE OR THAT SHE HAS SUCH A CRIMINAL BACKGROUND THAT THIS

22  COURT COULD CONCLUDE THAT SHE IS PRESENTLY A DANGER TO THE

23  COMMUNITY.

24        HOWEVER, WITH RESPECT TO RISK OF FLIGHT IT DOES CAUSE

25  ME SOME CONCERN.  THE TIES ARE MINIMAL.  SHE IS LOOKING AT A

 1  SUBSTANTIAL PERIOD OF TIME.  SHE HAS BEEN SHIPPED HERE FROM HER

 2  NATIVE COUNTRY.  IT JUST WOULD JUST NOT MAKE SENSE OR I HAVE

 3  NOT HEARD AN ARGUMENT THAT COULD CONVINCE ME THAT SHE WOULD

 4  STAY PUT IF SHE IS RELEASED ON BOND.

 5       HAVING SAID THAT, THAT SHE WILL BE PRETRIAL DETAINED

 6  AS A RISK OF FLIGHT.  I DO NOT BELIEVE THAT THERE IS A

 7  CONDITION OR A COMBINATION OF CONDITIONS THAT WOULD MAKE THIS

 8  COURT FEEL COMFORTABLE THAT THIS LADY WHO WAS EXTRADITED TO

 9  THIS COUNTRY WILL STAY HERE AND FACE THESE CHARGES IF WE DO

10  ALLOW HER TO GO FREE.

11       ANYTHING ELSE?

12       MR. RALLS:  YES, JUDGE.

13       WILL THE COURT GRANT US 30 DAYS OR A 30 DAY

14  CONTINUANCE ON THE ARRAIGNMENT?

15       THE COURT:  THIRTY DAYS TO DO WHAT?

16       MR. RALLS:  THE ARRAIGNMENT.  THE CONTINUANCE OF THE

17  ARRAIGNMENT FOR 30 DAYS.

18       THE COURT:  ANY OBJECTION, GOVERNMENT?

19       MS. WOOD:  NO, YOUR HONOR.

20       THE COURT:  OKAY.  YOU WILL HAVE 30 DAYS.

21       THE CLERK:  SET FOR (INAUDIBLE) SEPTEMBER 14TH AT TEN

22  O'CLOCK.

23       THE COURT:  OKAY.  THANK YOU.

24       MR. RALLS:  TWO OTHER QUICK MATTERS, JUDGE.

25       ONE INVOLVES MISS AVILA BELTRAN WAS TAKING SOME

1  MEDICATION FOR ANXIETY AND DEPRESSION.  SHE HAS BEEN TAKING

2  THAT MEDICATION FOR THE LAST FIVE YEARS.  COULD THE COURT

3  REQUEST THAT THE U.S. MARSHALS SEE TO IT THAT SHE RECEIVES SOME

4  MEDICAL ATTENTION TO THAT BECAUSE SHE HAS BEEN WITHOUT THAT

5  MEDICATION EVER SINCE SHE ARRIVED HERE.

6          THE COURT:  WELL, I AM CERTAIN THAT THE U.S. MARSHALS

7  IF THEY ARE AWARE OF THAT WILL TAKE CARE OF IT AND NOW THEY ARE

8  AWARE OF IT.

9          THE DEPUTY MARSHAL:  WE WILL ADVISE THE BOP, YOUR

10  HONOR, WHEN SHE GOES OVER SHE SEES A --

11          THE COURT:  THANK YOU VERY MUCH.

12          MR. RALLS:  AND LAST BUT NOT LEAST.  I DON'T MEAN TO

13  TAKE UP SO MUCH TIME OF THIS COURT.

14          COULD SHE BE KEPT IN THE COURTHOUSE HERE UNTIL AFTER I

15  HAVE AN OPPORTUNITY TO SPEAK WITH HER?  IT'S VERY DIFFICULT TO

16  SEE HER AT THE OTHER FACILITY.

17          THE COURT:  I DON'T WANT TO GET INTO THE MARSHALS

18  BUSINESS IN HOW THEY DO THINGS.  I'M SURE THEY COULD PROBABLY

19  WORK SOMETHING OUT WITH YOU, BUT I AM NOT GOING TO USE ANY --

20  IF I HAVE THE AUTHORITY TO DO THAT.  I JUST DON'T -- I AM NOT

21  GOING TO DO THAT.  I THINK THEY WILL WORK IT OUT.

22          MR. RALLS:  THANK YOU, JUDGE.

23          MS. WOOD:  THANK YOU, YOUR HONOR.

24          THE COURT:  OKAY.

25                      - - -

```
 1
 2
 3                          C E R T I F I C A T E
 4
 5
 6  UNITED STATES OF AMERICA
 7  SOUTHERN DISTRICT OF FLORIDA
 8
 9
10       I, CARL SCHANZLEH, OFFICIAL COURT REPORTER OF THE UNITED
11  STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA, DO
12  HEREBY CERTIFY THAT THE FOREGOING 24 PAGES CONSTITUTE A TRUE
13  TRANSCRIPT OF THE PROCEEDINGS HAD BEFORE THE SAID COURT HELD IN
14  THE CITY OF MIAMI, FLORIDA, IN THE MATTER THEREIN STATED.
15       IN TESTIMONY WHEREOF, I HEREUNTO SET MY HAND ON THIS 5TH
16  DAY OF SEPTEMBER 2012.
17
18                              /S/CARL SCHANZLEH
                                CARL SCHANZLEH, RPR-CM
19                              OFFICIAL FEDERAL COURT REPORTER
                                299 EAST BROWARD BLVD., 202B
20                              FORT LAUDERDALE, FL  33301
                                TELEPHONE 954/769-5488
21
22
23
24
25
```